# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| TERRELL DANIELS, | |
| Plaintiff, | |
| v. | CV 2:23-015 |
| KADARIUS BLAKLEY, JASON MONTGOMERY, and SAMUEL WOOD, | |
| Defendants. | |

## ORDER

Before the Court is a motion for summary judgment filed by Defendants Kadarius Blakley, Jason Montgomery, and Samuel Wood. Dkt. No. 37. The motion has been fully briefed and is ripe for review. Dkt. Nos. 45, 47.

## FACTUAL BACKGROUND[1]

This civil rights action stems from Plaintiff Terrell Daniels's April 25, 2021 encounter with Defendants, all of whom are City of Brunswick (Georgia) police officers. Police dispatch received a call reporting that several people came into Gracemore Nursing Home ("Gracemore") and began fighting. Dkt. No. 37-1 ¶ 1; Dkt. No. 45-1 ¶ 1. The caller advised that the aggressors in the fight were two Black females and one Black male with dreadlocks.

---

[1] The record evidence in this case consists entirely of affidavits from Plaintiff, Defendants, and one witness; three law enforcement body camera videos; and law enforcement Computer Aided Dispatch ("CAD") notes. See Dkt. Nos. 37-3, 37-4, 37-5, 37-6, 45-3, 45-4.

Dkt. No. 37-1 ¶ 1; Dkt. No. 45-1 ¶ 1.  The caller further advised that the offenders then left the nursing home and went across the street.  Dkt. No. 37-1 ¶ 1; Dkt. No. 45-1 ¶ 1.  Defendants responded to Gracemore in reference to the fight.  Dkt. No. 37-1 ¶ 2; Dkt. No. 45-1 ¶ 2.  Upon Defendants' arrival, one of the Gracemore employees indicated that the offenders were two females and one male and that they were across the street.  Dkt. No. 37-1 ¶ 3. One of the Gracemore employees indicated that one of the female offenders was a girl named OhnJyre, who was wearing a pink tie-dyed top.  Id.  Defendants then went across the street to 1801 "R" Street and knocked on the door of the residence.  Id. ¶ 4.  A woman answered and stated that she was OhnJyre's grandmother.  Id.  While Defendants were speaking with the grandmother, Plaintiff—a Black male with dreadlocks in a bun and wearing a black shirt—arrived, followed shortly by OhnJyre.  Id.; see also Dkt. No. 45-1 ¶ 4.  At one point during this encounter, Plaintiff can be seen on body camera footage walking to the end of the driveway, yelling "Hey" at Gracemore employees who are across the street.  Dkt. No. 38-2, Wood Body Camera, at 0:06:14-0:06:20.

While Defendant Montgomery stayed at the residence to speak with OhnJyre about a related altercation with two Gracemore employees that occurred earlier that day, Defendants Wood and Blakley went back across the street to speak with Gracemore employees.  Dkt. No. 37-1 ¶ 5.  Defendants Wood and Blakley met

with one of the employees alleged to have been injured in the fight.  Id. ¶ 6.  The employee indicated that during the fight, a Black male with dreadlocks was kicking her and took her phone. Id.  Defendants Wood and Blakley also spoke with Gracemore nurse, Morgan Carter, who showed them a "poor quality" cell phone video of the fight that she had recorded.  Id. ¶ 7; Dkt. No. 45-4 ¶¶ 10-11.  Carter attested that at this time, she gave Defendants Wood and Blakley a description of the male individual involved in the fight; she described the person as a short, light-skinned Black man with dreads.[2]  Dkt. No. 45-4 ¶¶ 13-14.  Officer Wood observed that the video showed a Black male with dreadlocks, wearing a black t-shirt, "kicking the shit out of" Gracemore employees.  Dkt. No. 37-1 ¶ 7.  The Parties dispute whether the Black male in the video matched the appearance of Plaintiff.  Id.; Dkt. No. 45-1 ¶ 9. However, when Defendant Wood asked the Gracemore employees whether the Black male across the street who was yelling at them was the same Black male in the video, one of the employees confirmed he was.  Dkt. No. 37-1 ¶ 7.

Upon learning this, Defendants Wood and Blakley went back across the street to the residence where Plaintiff—a Black male with dreadlocks wearing a black shirt—was standing in the driveway. Dkt. No. 38-2 at 0:09:55-0:10:32.  On his walk to the residence,

---

[2] Though Plaintiff does not present evidence of how tall he is, he asserts in his brief that he is six feet and once inch tall.  Dkt. No. 45-2 at 4.

Defendant Blakley can be heard saying to Defendant Wood, "He gone fight." Dkt. No. 38-1, Blakley Body Camera, at 0:06:17-0:06:21. Defendant Blakley approached Plaintiff and said "Put your hands behind your back." Id. at 0:06:40-0:06:55; Dkt. No. 38-2 at 0:10:26-0:10:35. Plaintiff appeared to comply, putting his hands behind his back. Dkt. No. 38-2 at 0:10:30-0:10:33. Then, Defendant Blakley held Plaintiff's wrists behind his back while Defendant Wood approached from the side and attempted to handcuff Plaintiff. Id. at 0:10:33-0:10:36. At this point, the bodycam footage becomes shaky. Defendant Montgomery approached Plaintiff from the front, and a struggle ensued. Id. at 0:10:36-0:10:42. Defendant Blakley can be heard saying "Bro, come on now." Dkt. No. 38-1 at 0:06:52-0:06:58. Defendants affied that Plaintiff tightened up his shoulders and attempted to pull away from them, resisting detention. Dkt. No. 37-1 ¶ 8; Dkt. No. 37-3 ¶ 6; Dkt. No. 37-4 ¶ 7; Dkt. No. 37-5 ¶ 8. Plaintiff does not deny that he resisted detention. See generally Dkt. Nos. 45-1, 45-3.

Both Plaintiff and Defendant Montgomery's knees bent, and Plaintiff fell forward to his knees. Dkt. No. 38-2 at 0:10:36-0:10:42. Plaintiff can be heard yelling, "I'm going to the ground."[3] Dkt. No. 38-1 at 0:06:57-0:07:00; Dkt. No. 38-2 at 0:10:38-0:10:42. Defendant Blakley simultaneously fell on top of Plaintiff's back, causing Plaintiff to lie flat on his stomach on

---

[3] Plaintiff contends Defendants "threw [him] to the ground." Dkt. No. 45-3 ¶ 9.

the ground.   Dkt.   No.   38-2   at   0:10:42-0:10:46.   Defendant
Montgomery knelt to the left of Plaintiff's back as Defendant
Blakley, on the right, positioned his lower left leg across
Plaintiff's upper legs, with Blakley's right leg knelt beside
Plaintiff's back.   Id.   Defendants Montgomery and Blakely held
Plaintiff's hands behind his back while Defendant Montgomery
handcuffed Plaintiff.   Id. at 0:10:44-0:10:52; Dkt. No. 37-1 ¶ 8.

Defendants permitted Plaintiff to stand up, and he asked what
he had done wrong, and Defendant Wood stated, "We have you on
video. . . . When you was kicking the shit out of her." Dkt. No.
38-2 at 0:11:15-0:11:20.   Plaintiff responded, "Kicking who?   I
didn't fight nobody[.]"   Id. at 0:11:20-0:11:24.   Defendant Wood
said, again, "We have you on video."   Id.   Plaintiff again stated,
"I didn't fight nobody," and Defendant Wood stated, "You're right,
you're right.   Well, you're going to jail."   Id. at 0:11:24-
0:11:31.

Defendant Montgomery walked Plaintiff, in handcuffs, across
the street, and Defendant Wood stated over the radio that he was
bringing the patrol car around and instructed Defendant Montgomery
to not "bring [Plaintiff] to the fence" where Gracemore employees
were standing.   Dkt. No. 38-1 at 0:08:35-0:09:40.   Defendant
Blakley also walked across the street, at which time Ms. Carter
and another Gracemore employee, who had seen Plaintiff in
handcuffs, called Blakley over and explained that Plaintiff was

not the man who was captured on video kicking a Gracemore employee. Id. at 0:09:45-0:09:58.  The other Gracemore employee described the man in the video as "darker and shorter." Id. Defendant Blakley then walked over to where Defendant Montgomery and Plaintiff were standing and said, "Take 'em off." Id. at 0:09:56-0:10:11.  Defendant Montgomery immediately removed the handcuffs from Plaintiff.  Id. at 0:10:11-0:10:33.  Plaintiff was detained for three minutes and forty seconds.  Dkt. No. 37-1 ¶ 11.[4]

## PROCEDURAL BACKGROUND

On December 6, 2022, Plaintiff filed this action against Defendants, as well as the City of Brunswick, in Glynn County Superior Court.  Dkt. No. 1-1 at 7.  On January 23, 2023, Defendants removed the case to this Court.  Thereafter, Defendant City of Brunswick moved to dismiss Plaintiff's claims against it, dkt. no. 8, and the Court granted the motion, dkt. no. 12.  The remaining parties then engaged in a period of discovery.  Dkt. Nos. 18, 25, 28, 35.  Now, Defendants Blakley, Montgomery and Wood jointly move for summary judgment as to all of Plaintiff's claims against them, in their individual capacities, i.e., a 42 U.S.C. § 1983 claim for false arrest, in violation of the Fourth Amendment; a § 1983 claim

---

[4] Though Plaintiff states in his affidavit that he was injured in the tussle with Defendants, dkt. no. 45-3 ¶ 10, he does not specify the type or extent of such injuries.

for excessive force, in violation of the Fourth Amendment; and a state law claim of battery.  Dkt. No. 37.[5]

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the Court

---

[5] To the extent Plaintiff asserted official capacity claims against Defendants, those claims were dismissed with the City of Brunswick's Monell claim.  See Dkt. No. 12 at 4-6; see also Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).").

that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Or second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

## DISCUSSION

Defendants assert they are entitled to summary judgment on Plaintiff's claims for false arrest, excessive force, and battery.

### I.   Plaintiff's § 1983 False Arrest Claim

Plaintiff first argues that Defendants violated his Fourth Amendment rights because he was arrested without probable cause. Dkt. No. 45-2 at 4.  Defendants argue they are entitled to qualified immunity.  Dkt. No. 37-2 at 9 n.4.

### A. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003). When properly applied, the doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To receive qualified immunity, a government official must prove he was "acting within his discretionary authority" at the time the alleged wrongful acts occurred. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). An official may demonstrate that he was acting through his discretionary authority by establishing two things: first, that he "was performing a legitimate job-related function" and second, that he pursued this function "through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Once the Defendant demonstrates that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." Cottone, 326 F.3d at 1358.

Here, Defendants were acting within their discretionary authority when Plaintiff was placed in handcuffs. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (noting that an officer acts within his discretionary authority at the time of an arrest). The burden thus shifts to Plaintiff to demonstrate that qualified immunity does not apply. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012).

The Court asks two questions to determine whether a defendant is entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court asks "whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002). The Court also assesses whether the constitutional right at issue was "clearly established at the time of the alleged violation." Harland, 370 F.3d at 1264. A right is clearly established when it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009); see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). We therefore begin by analyzing whether Defendants violated Plaintiff's constitutional rights.

### B. Plaintiff's Detention

With regard to Plaintiff's false arrest claim, the Parties first dispute whether Defendants' detention of Plaintiff was an investigatory <u>Terry</u> stop or an arrest.  <u>Compare</u> Dkt. No. 37-2 at 5 <u>with</u> Dkt. No. 45-2 at 3; <u>see also</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968).  "There is a difference between an investigative stop of limited duration for which reasonable suspicion is enough, and a detention that amounts to an arrest for which probable cause is required.  The difference is one of extent, with the line of demarcation resulting from the weighing of a 'limited violation of individual privacy involved against the opposing interests in crime prevention and detection and in the police officer's safety.'"  <u>United States v. Acosta</u>, 363 F.3d 1141, 1145-46 (11th Cir. 2004) (quoting <u>Dunaway v. New York</u>, 442 U.S. 200, 209 (1979)).  The Eleventh Circuit applies "four non-exclusive factors" to differentiate between a <u>Terry</u> stop and an arrest: (1) "the law enforcement purposes served by the detention," (2) "the diligence with which the police pursue the investigation," (3) "the scope and intrusiveness of the detention," and (4) "the duration of the detention."  <u>Id.</u> at 1146 (quoting <u>United States v. Gil</u>, 204 F.3d 1347, 1351 (11th Cir. 2000)).

In analyzing the first factor, the law enforcement purposes served by the detention, the Eleventh Circuit has stated that "'the most important [consideration] "is whether the police detained

[plaintiff] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference."'" Id. (quoting Gil, 204 F.3d at 1351).  The Court must determine "whether these officers utilized 'brief, minimally intrusive investigation technique[s]' appropriate under Terry." Id.; see also United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988)).  Here, Defendants performed no investigation techniques once they put Plaintiff in handcuffs.  Defendants asked Plaintiff no questions, and when Plaintiff proclaimed his innocence, Defendant Wood told Plaintiff he was "going to jail."  Dkt. No. 38-2 at 0:11:15-0:11:31.  Then, Defendant Montgomery walked Plaintiff across the street to wait on the patrol car, presumably to take Plaintiff to jail.  Dkt. No. 37-4 ¶ 9.  The evidence strongly suggests that the only reason Plaintiff was released from handcuffs is because Gracemore employees called Blakley over to them to explain that Plaintiff was not the male offender in the cell phone video.  Dkt. No. 38-1 at 0:09:45-0:09:58.  The first factor therefore weighs in favor of finding that Defendants arrested Plaintiff.

Under the second factor, the Court asks "whether the police were diligent in pursuing their investigation, that is, whether the methods the police used were carried out without unnecessary delay."  Acosta, 363 F.3d at 1146.  But, as just explained, Defendants used no investigatory methods after handcuffing

Plaintiff, so the Court is unable to assess Defendants' diligence in pursuing an investigation.

As for the third factor, the scope and intrusiveness of the detention, the Court asks "whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." Id. "The Supreme Court has stated that officers may take reasonable steps to ensure their safety so long as they possess 'an articulable and objectively reasonable belief that the suspect is potentially dangerous.'" Id. (quoting Michigan v. Long, 463 U.S. 1032, 1051 (1983)). Here, Defendants affied that they believed Plaintiff to be potentially dangerous, given the cell phone video of the fight in which a Black male with dreadlocks and wearing a black shirt was hitting and kicking Gracemore employees. Dkt. Nos. 37-3 ¶ 9, 37-4 ¶ 11, 37-5 ¶ 11. Defendants argue it was necessary to detain Plaintiff for their safety and to maintain the status quo of the investigation. Dkt. No. 37-2 at 7-8. Further, because Plaintiff resisted detention, dkt. no. 37-1 ¶ 8, Defendants took Plaintiff to the ground. Considering this factor in isolation, the scope and intrusiveness of Plaintiff's detention did not exceed the amount reasonably needed by Defendants to ensure their personal safety. This factor

weighs in favor of finding Defendants placed Plaintiff in investigative detention.

"The fourth and final factor is whether the duration of the detention was reasonable.  There is no rigid time limitation or bright line rule regarding the permissible duration of a Terry stop."  Acosta, 363 F.3d at 1147.  Here, Plaintiff was detained for only three minutes and forty seconds.  This factor weighs in favor of finding Defendants placed Plaintiff in investigative detention.

Viewing all facts in the light most favorable to Plaintiff, the Court finds Defendants arrested Plaintiff.  The most important consideration "is whether the police detained [Plaintiff] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference."  Acosta, 363 F.3d at 1146.  Here, Defendants placed Plaintiff in handcuffs, Defendant Wood told Plaintiff he was "going to jail," and Defendant Montgomery walked Plaintiff across the street from the residence to be placed in the patrol car.  During this time, Defendants asked Plaintiff no questions and pursued no other method of investigation.  Further, the non-Defendant officer on the scene called in a "10-95," which means a subject is in custody.[6]  Dkt. No. 37-6 at 4.  Having found that Plaintiff's

---

[6] Defendant Blakley later changed the 10-95 to "male [in] investigative detention."  Dkt. No. 37-6 at 4.

detention amounted to an arrest, the Court now turns to the constitutionality of Plaintiff's arrest.

### C. Probable Cause

Plaintiff next argues that his arrest was made without probable cause. Dkt. No. 45-2 at 4. A warrantless arrest without probable cause violates the Constitution and serves as the basis of a § 1983 claim. Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004). But existence of probable cause at the time of the arrest is an absolute bar to a § 1983 action for false arrest. Id. The Court must decide whether Defendants demonstrate, as a matter of law, that probable cause existed to arrest Plaintiff.

Probable cause to arrest exists where an arrest is "objectively reasonable based on the totality of the circumstances." Id. (citing Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)). An arrest is objectively reasonable when the facts and circumstances "within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010). When determining whether an official is entitled to qualified immunity, however, the Court asks whether an officer had arguable— not actual—probable cause. Montoute v. Carr, 114 F.3d 181, 184

15

(11th Cir. 1997).   Arguable probable cause to arrest exists if
objectively reasonable officers in the same circumstances and
possessing the same knowledge as the officer effectuating the
arrest could have believed that probable cause existed.   Case v.
Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009).

The undisputed facts set forth in the record show that
Defendants had arguable probable cause to believe that Plaintiff
had committed the offense for which Defendants made the arrest.
Here, Plaintiff matched the description of the Black male with
dreadlocks wearing a black shirt who had entered Gracemore and
been fighting and kicking Gracemore employees.   Dkt. No. 37-1 ¶¶ 1,
4.   Officer Wood also viewed the telephone video recording of the
fight, and Plaintiff appeared to him to be the individual from the
video.   Id. ¶ 7.   When Defendant Wood asked the Gracemore employees
if the guy who yelled at them from across the street was the
offender, they confirmed he was.   Id.   Additionally, Plaintiff was
found across the street where Gracemore employees said the offender
ran, _and_ at the same residence where one of the individuals
actually involved in the fight—OhnJyre—was found.   Id. ¶¶ 3, 4.   A
reasonable officer could have believed that Plaintiff violated the
law by hitting and kicking Gracemore employees.

Plaintiff argues he could not be mistaken for the actual
offender in the video because he, who stands six feet and one inch
tall, is not "short," and he is not "light-skinned," as the

16

witness, Ms. Carter, described the offender to Defendants before Plaintiff's arrest.  Dkt. No. 45-2; Dkt. No. 45-4 ¶ 14.  Plaintiff is correct in that a reasonable officer would consider Plaintiff neither short in stature nor light-skinned.  However, arguable probable cause is assessed by what an objectively reasonable officer would believe, "based on the totality of the circumstances."  Kingsland, 382 F.3d at 1226.  Here, an eyewitness confirmed that Plaintiff was the offender in the video.  When Defendant Wood asked the Gracemore employees whether the Black male across the street who was yelling at them was the same Black male in the video, one of the employees confirmed he was.  Dkt. No. 37-1 ¶ 7; Dkt. No. 37-2 at 0:06:14-0:06:20.  Indeed, the body camera footage shows Plaintiff yelling at Gracemore employees who were across the street.  Dkt. No. 38-2 at 0:06:14-0:06:20.

"Probable cause [to arrest] is not a high bar."  District of Columbia v. Wesby, 583 U.S. 48, 57 (2018).  Arresting officers making a probable cause determination "are not required to sift through conflicting evidence or resolve issued of credibility, so long as the totality of the circumstances present a sufficient basis for believing" that an individual committed an offense.  Paez v. Mulvey, 915 F.3d 1276, 1286 (11th Cir. 2019).  Despite Plaintiff's height and complexion[7] not matching the description of

---

[7] After Plaintiff's arrest, another Gracemore employee, while standing beside Ms. Carter, described the offender as "darker" than Plaintiff, and Ms. Carter did not say anything to contradict

the offender, an objectively reasonable officer in the same circumstances and possessing the same knowledge as Defendants could have believed that probable cause existed to arrest Plaintiff for the battery of Gracemore employees.  And, since Plaintiff's arrest was supported by arguable probable cause, there can be no constitutional violation of false arrest.[8]  <u>Brown v. Abercrombie</u>, 151 F. App'x 892, 893 (2005).  Accordingly, Defendants are entitled to qualified immunity as to Plaintiff's Fourth Amendment false arrest claim, and their motion for summary judgment, dkt. no. 37, as to this claim is **GRANTED**.

## II.  Plaintiff's § 1983 Excessive Force Claim

Plaintiff next argues that Defendants violated his Fourth Amendment right to be free from excessive force.  Dkt. No. 45-2 at 5.  Use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment.  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  This Court's review centers on whether the force used by Defendants was objectively reasonable from the perspective of a reasonable officer on the scene.  <u>Graham</u>, 490 U.S. at 396. The Eleventh Circuit evaluates three factors when determining if the force used by an officer in making an arrest was objectively reasonable:  "(1) the need for the application of force, (2) the

---

this.  Dkt. No. 38-1 at 0:09:45-0:09:58.  The record does not reflect the actual complexion of the offender.
[8]  Because the Court finds no constitutional violation, it need not address whether the constitutional right at issue was clearly established.  <u>Durruthy</u>, 351 F.3d at 1094-95.

relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Stephens v. DeGiovanni, 852 F.3d 1298, 1324 (11th Cir. 2017) (citing Vinyard, 311 F.3d at 1347).

The evidence in the light most favorable to Plaintiff shows that Defendant Blakley approached Plaintiff and said "Put your hands behind your back." Id. at 0:06:40-0:06:55; Dkt. No. 38-2 at 0:09:55-0:10:32 at 0:10:26-0:10:35. Plaintiff appeared to comply, putting his hands behind his back. Dkt. No. 38-2 at 0:10:30-0:10:33. Then, Defendant Blakley held Plaintiff's wrists behind his back while Defendant Wood approached from the side and attempted to handcuff Plaintiff. Id. at 0:10:33-0:10:36. Defendant Montgomery approached Plaintiff from the front, id. at 0:10:36-0:10:42, and Defendants caused Plaintiff to fall forward to his knees. Dkt. No. 45-3 ¶ 9; Dkt. No. 38-2 at 0:10:36-0:10:42. Defendant Blakley simultaneously fell on top of Plaintiff's back, causing Plaintiff to lie flat on his stomach on the ground. Dkt. No. 38-2 at 0:10:42-0:10:46. Defendant Blakley positioned his lower left leg across Plaintiff's upper legs, with Blakley's right leg knelt beside Plaintiff's back. Id. Defendants Montgomery and Blakely held Plaintiff's hands behind his back while Defendant Montgomery handcuffed Plaintiff. Id. at 0:10:44-0:10:52; Dkt. No.

37-1 ¶ 8.  Plaintiff was handcuffed for three minutes and forty seconds.  Dkt. No. 37-1 ¶ 11.

Turning to the first Graham factor, the need for the application of force, the Court has determined that Defendants had arguable probable cause to make an arrest.  The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham, 490 U.S. at 396.  The Eleventh Circuit recognizes that an arrest carries with it some force and injury.  See Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000).  Defendants were entitled to use a de minimis amount of force to effectuate an arrest.

The Court turns next to the amount of force used.  Defendants believed that Plaintiff was the male seen in the cell phone video hitting and kicking Gracemore employees.  Dkt. No. 37-5 ¶ 11.  Defendants believed Plaintiff to be dangerous.  Dkt. Nos. 37-3 ¶ 9, 37-4 ¶ 11, 37-5 ¶ 11.  Indeed, in the body camera footage, Defendant Blakley can be heard saying Plaintiff "gone fight."  Dkt. No. 38-1 at 0:06:17-0:06:21.  When Plaintiff resisted detention, dkt. no. 37-1 ¶ 8; dkt. no. 37-3 ¶ 6; dkt. no. 37-4 ¶ 7; dkt. no. 37-5 ¶ 8, Defendants put him on the ground, dkt. no. 38-2 at 0:10:38-0:10:46.  In Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003), the Eleventh Circuit made clear that "forcing [an individual] down to the ground and placing him in handcuffs" is

20

"not unlawful" and constitutes only a de minimum use of force. "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Id. (quoting Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000)).

Finally, the Court reaches the extent of Plaintiff's injury. Nowhere in the record does Plaintiff specify the type or extent of his injuries. He states only that Defendants actions "caused injuries to [him] for which [he] ha[s] had to seek treatment." Dkt. No. 45-3 ¶ 10. In the body camera footage, Plaintiff shows no signs of injury upon being released from handcuffs. Dkt. No. 38-3, Spaulding Body Camera, at 0:15:17-0:15:24.

The Court finds that the force applied by Defendants when arresting Plaintiff was objectively reasonable from the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396. "[E]ven if the force applied by [Defendants] in effecting the arrest—forcing [Plaintiff] down to the ground and placing him in handcuffs—was unnecessary, plainly it was not unlawful." Durruthy, 351 F.3d at 1094. "The amount of force used was de minimus." Id. "In fact, the quantum of force used here was far less than [the Eleventh Circuit] has sustained in other contexts." Id (citing Nolin, 207 F.3d at 1255 (finding force to be de minimus where an officer grabbed the plaintiff 'from behind by the shoulder and wrist, threw him against a van three or four

feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"); Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding the force used to be minor where officers slammed the plaintiff against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants pocket)).  Therefore, Defendants did not use excessive force when arresting Plaintiff, and they are entitled to qualified immunity.  Defendants' motion for summary judgment, dkt. no. 37, is therefore **GRANTED** as to Plaintiff's Fourth Amendment excessive force claim.[9]

**III. Plaintiff's Battery Claim**

Lastly, Plaintiff asserts a battery claim under Georgia law. O.C.G.A. § 51-1-13 provides that "[a] physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury, unless he is justified under some rule of law."  Here, the Court has found that Defendants had arguable probable cause to arrest Plaintiff, and that Defendants did not use excessive force in effecting the arrest.  Therefore, Defendants' touching of Plaintiff was "justified under some rule of law," § 51-1-13, and Plaintiff's

---

[9] Because the Court finds no constitutional violation, it need not address whether the constitutional right at issue was clearly established.  Durruthy, 351 F.3d at 1094-95.

battery claim must fail.  Defendants' motion for summary judgment, dkt. no. 37, is **GRANTED** as to this claim.

CONCLUSION

Defendants had arguable probable cause to arrest Plaintiff, and they used a de minimus amount of force in effecting the arrest. Therefore, Plaintiff's claims for false arrest, excessive force, and battery fail, and Defendants' motion for summary judgment is **GRANTED** in its entirety.  Dkt. No. 37.  There being no claims remaining in this action, the Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 5th day of July, 2024.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA